# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 22-0827V

| | |
|---|---|
| BENJAMIN GOOTEE,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: December 2, 2024 |

*Joseph Alexander Vuckovich, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.*

*Emilie Williams, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On July 29, 2022, Benjamin Gootee filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine he received to his right shoulder on November 18, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $43,000.00, for his actual pain and suffering, plus $961.16 for unreimbursable medical expenses.

### I. Procedural History

On October 18, 2023, I issued a ruling on entitlement in favor of Petitioner. ECF No. 24. On September 3, 2024, Petitioner filed his brief in support of damages ("Mot."), and Respondent filed a Response on October 2, 2024 ("Opp."). Petitioner filed a reply ("Reply") memorandum on October 16, 2024. ECF Nos. 38-39, 41. I heard arguments from both parties during a Motions' Day Damages hearing held on November 22, 2024.

### II. Relevant Medical History

Mr. Gootee was a 37-year-old CEO and owner of a construction company at the time he received the flu vaccine in his right shoulder at the office of his primary care physician ("PCP") on November 18, 2020. Ex. 1 at 1; Ex. 10 at 1-2. His past medical history is unremarkable for any type of right shoulder pain or dysfunction. *See e.g.*, Ex. 3 at 6.

In his declaration, Mr. Gootee stated that on December 1, 2020, during an initial physical therapy ("PT") evaluation for his Achilles heel, he mentioned to his physical therapist that he had right shoulder pain and limited range of motion from his November 18, 2020 flu shot. Ex. 10 at 1. Mr. Gootee added that the earliest PT appointment he could get scheduled to address his shoulder was set for December 30, 2020. *Id*.

On December 30, 2020, 42 days after vaccination, Mr. Gootee attended a previously scheduled PT session for his ongoing Achilles tendonitis. Ex. 6 at 1081. He reported to his therapist that his calves were improving but that his right shoulder was "really irritating him from when he got the flu shot back in November." *Id*. at 1082. Mr. Gootee further reported "discomfort during certain movements, especially horizontal adduction." *Id.*

On January 3, 2021 (now 46 days post-vaccination), Mr. Gootee sent a note to his primary care provider, Dr. Ryan Lee, stating, "I received a flu shot on 11/18/2020 at my annual check-up in my right shoulder and ever since it has remained sore and I have limited range of motion." Ex. 6 at 985. He further stated that "[m]y shoulder hurts when I lift my arm over my head, when I reach across my body, when I lift with an extended

reach, and when I'm sleeping on my right side." *Id.* at 984-85. Dr. Lee recommended that Mr. Gootee take Aleve and referred him to PT specifically for his shoulder. *Id.*

Mr. Gootee completed 23 sessions of physical therapy for his right shoulder from February to June 2021. *See, e.g.,* Ex. 6 at 340-41, 382-83, 448-49, 527-28. During this time, he reported intermittent sharp, shooting pain as severe as six or seven on a ten-point scale with certain movements. *Id.* at 527, 558.

At a consultation with orthopedist Dr. Timothy Finney, M.D. on May 3, 2021, Mr. Gootee was found to have decreased strength, decreased range of motion, and positive impingement signs. Ex. 3 at 7-9. An x-ray revealed a Type III acromion and degenerative acromioclavicular joint changes. *Id.* at 9. He received a steroid injection in his right shoulder. *Id.* Following the steroid injection, Mr. Gootee reported fatigue and demonstrated residual guarding of his right shoulder following a golf trip. Ex. 6 at 186-87. However, the injection provided Mr. Gootee with some relief. Ex. 10 at 1-2.

Mr. Gootee's final PT session occurred on June 9, 2021, approximately seven months after vaccination. Ex. 6 at 95-97. He now reported feeling no pain or tightness in his right shoulder or forearm, adding that he was happy with his present state and ready for discharge. *Id.* at 95. Mr. Gootee had played golf two days in a row without issue. *Id.* His therapist noted that Petitioner completed his final task of lifting from various heights with no issue and had achieved all his goals in therapy. *Id.* Mr. Gootee had full ROM and "complete[ly] return[ed] to premorbid level." *Id.* 96. He was discharged, with the recommendation to continue home exercises for "stabilization." *Id.* 97.

On December 20, 2021, Mr. Gootee presented to his internist for an annual exam and a flu vaccine. Ex. 9 at 14. No musculoskeletal complaints were noted, and a normal ROM was documented. *Id.* at 16.

In his most recent declaration (dated June 14, 2022), Mr. Gootee explained the impact of his injury on his career and personal life:

> The combination of my inability to sleep and my concern that I would never return to my normal life led to a decline in my emotional well being. I became depressed, withdrawn and had little patience for issues that would seem minor to a healthy person. My injury affected my ability to perform my job duties. Due to my exhaustion and depression, I found it hard to concentrate and make important decisions. Additionally, I had to take time away from work to attend my appointments. I am the CEO of a medium sized business with approximately 150 employees. I hold myself to the highest standards

3

of performance and my inability to work in the capacity I previously worked furthered my feelings of anxiety and depression.

Ex. 10 at 2. A witness statement offered by Erik Frank, a business acquaintance of Mr. Gootee's, similarly describes the negative effect of Mr. Gootee's SIRVA on his outlook and on his work as a business owner. Ex. 16. Kyle Sharbonno, who serves as Vice President of Mr. Gootee's company, corroborates these accounts, explaining that Mr. Gootee stepped back from his management of the day-to-day affairs of his company during the period when he was injured. Ex. 17. Finally, Petitioner's wife, Ashley Gootee, confirms his account of the difficulties that his SIRVA caused him in playing sports with his boys and lifting and carrying them. Ex. 18. She also describes the sleep disturbances that Petitioner suffered, as well as the effect of his injury on the operation of his construction business. *Id.*

### III. The Parties' Arguments

#### a. Petitioner

Petitioner contends that his injury took a "considerable emotional toll" on him, as well as hindered his job performance. Mot. at 8. He explained that his SIRVA caused pain that he rated at 6/7 out of 10 at its worst. *Id*. Petitioner argues that his treatment included an orthopedist appointment, a steroid injection, and 23 PT sessions, but that his residual symptoms persisted until at least May 2024. *Id*. Petitioner argued that based on the facts and circumstances of his case, he is entitled to an award of $85,000.00 in past pain and suffering and $916.61, for his out-of-pocket expenses. *Id*.

Petitioner cited to two cases in support of his claim for past pain and suffering: (1) *Russano v. Sec'y of Health & Human Servs.*, No. 18-0382V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020), and (2) *Rael v. Sec'y of Health & Human Servs.*, No. 16-1462V, 2020 WL 901449 (Fed. Cl. Spec. Mstr. Jan. 28, 2020). Petitioners were awarded $80,000.00, and $85,000.00, respectively, for their past pain and suffering in those cases.

#### b. Respondent

Respondent has argued that Petitioner's request for $85,000.00 is "excessive," and that instead an award "consistent with previous mild cases for pain and suffering" is justified. Opp. at 2. Citing to 11 allegedly comparable cases, Respondent has argued that Petitioner's duration of injury and course of treatment were "mild" overall. Opp. at 10. Respondent also noted that Mr. Gootee's treatment consisted of physical therapy and one cortisone injection and that at his final treatment sessions, just seven months after vaccination, "he was pain-free, had full ROM, and had returned completely to his

'premorbid level.'" *Id*. Respondent also argued that despite Petitioner's assertion, Mr. Gootee's SIRVA had likely completely resolved seven months after vaccination, which demonstrates that this was a mild case. *Id*. However, Respondent has not proposed a specific number to be awarded for Petitioner's pain and suffering, arguing instead that "respondent has determined that his recommendation of a specific number has not assisted the special masters in their determinations." Opp. at 5.

Respondent distinguished the two cases cited by Petitioner, contending that in one the relevant petitioner also suffered compensatory injuries which justified a higher award, whereas the other petitioner was also awarded a sum for *future* pain and suffering, demonstrating that the injury therein was prolonged. Opp. at 6. In the present case, Petitioner treated for just seven months, justifying a lower award. Opp. at 10-11.

The pain and suffering awards in the 11 cases cited by Respondent range from $30,000.00 to $65,000.00. *Id*. Respondent argues that these cases are the more appropriate comparable cases, and that Petitioner should be awarded a sum within this range. Opp. at 10.

## IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of*

*Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V.    Appropriate Compensation in this SIRVA Case

#### a. Awareness of Suffering

Neither party disputes that that Mr. Gootee had full awareness of his suffering, and I find that fact is supported by the record evidence.

#### b. Severity and Duration of Pain and Suffering

As I noted during the hearing, Mr. Gootee's SIRVA injury did <u>not</u> require surgical intervention (meaning a six-figure award is not called for). And the two cases cited by Petitioner are not helpful comparable decisions, since both involve distinguishable special circumstances. In *Russano*, for example, the petitioner's SIRVA injury exacerbated deficits in her non-injured arm due to her history of breast cancer. The *Russano* petitioner also developed chondrodermatitis nodularis due to her SIRVA injury which necessitated multiple cortisone injections. *Russano*, 2020 WL 3639804. In *Rael*, 2020 WL 901449, the petitioner's SIRVA injury persisted beyond the initial eight months of his treatment course (with that petitioner still seeking treatment two years post-vaccination), leading to an award for future pain and suffering for the duration of petitioner's life. Neither one of these special circumstances are present in Mr. Gootee's case, and Petitioner's argument that his position as a business owner is a type of "special" circumstance that warrants a similar award is simply not persuasive.

Respondent, by contrast, has cited to a number of cases that appeared to be good comparables (and they would have been even more persuasive - had Respondent proposed a specific amount of award). But simply citing to a range of cases and

requesting that I choose an award that is "consistent with previous mild cases for pain and suffering" does not provide adequate aid in resolving the parties' dispute.[3] As has been articulated in many cases, awarding an amount of pain and suffering is an art and not a science, and it is thus incumbent upon the parties to express their views as to what *specific* award is proper. As no two cases are identical, it is to be expected that awards may deviate somewhat from the amounts that each party proposes, but I continue to look to the parties to provide case law to support their proposed award and to achieve a body of cases that are consistent, predictable, and fair.

Looking at Mr. Gootee's specific circumstances, his SIRVA was on the very mild end of the spectrum. Although Mr. Gootee described the ongoing pain and weakness in his right shoulder, as well as how his injury had affected his ability to run his business while he was seeking treatment, his injury mostly resolved in those seven months by his own admission. Although Mr. Gootee argued during the hearing that his position was more physical than a typical CEO position in that he was required to visit job construction sites, there is still inadequate evidence in the record to demonstrate how his SIRVA injury physically affected his job performance.

Those comparable decisions involving pain and suffering awards on the lower end of the range – between $35,000 and $45,000,00 - appear to offer the most useful guidance herein. And during the hearing, Respondent appeared to take the position that the cases cited on the higher end of their range (near approximately $65,000.00) resulted in too-high determinations for use in this case. Despite Respondent's failure to propose a specific award for Mr. Gootee's pain and suffering, I find that an award on the lower end of the range proposed by Respondent is more appropriate. (However, I caution Respondent not to continue to use this method of arguing cases, as it is not helpful or productive, in achieving an appropriate award in SIRVA cases). Thus, based on all of the circumstances and evidence submitted, and in the interest of rough justice, I find that his past pain and suffering warrants an award of $43,000.00.

The parties agree on the amount to be awarded to Mr. Gootee for his out-of-pocket unreimburseable expenses, and I find that all his requested expenses are reasonable and directly related to his SIRVA injury, and thus, award the full amount requested of $961.16.

---

[3] I also do not deem meritorious Respondent's contentions about the Program issuing unreasonably generous pain and suffering awards. In his brief, Respondent explains that he "proffers his assessment of the full value of damages" and argues that "[a]wards that significantly deviate from this full value incentivize petitioners to reject respondent's full-value proffers, confident that the court will always award more." Opp. at 5. It is equally possible that Respondent's valuation of cases may not be properly considering what awards are likely in Program cases. And it is otherwise not always the case that the court awards amounts that are higher than what Respondent has proffered.

## **CONCLUSION**

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, pursuant to Section 12(d)(3)(A), **I find that $43,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[4] I also find that Petitioner is entitled to $961.16, in actual unreimbursable expenses.**

**Accordingly, I award Petitioner a lump sum payment of $43,961.16, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master

---

[4] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.